UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID ANTHONY D.,[1]          )
                              )
      Plaintiff,              )
                              )
vs.                           )          Case No. 4:24-CV-6-ACL
                              )
LELAND DUDEK,                 )
Acting Commissioner of Social Security )
Administration,[2]            )
                              )
      Defendant.              )

## **MEMORANDUM**

Plaintiff David D. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with

---

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2]Leland Dudek is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I.   Procedural History

Plaintiff filed his applications for benefits on December 3, 2020.   (Tr. 267-68, 271-76.) He claimed he became unable to work on September 30, 2019, due to depression, bipolar disorder, high blood pressure, and a kidney condition.   (Tr. 305.)   Plaintiff was 59 years of age on his alleged onset of disability date.   (Tr. 267-68, 271-76.)   His applications were denied initially and on reconsideration.   (Tr. 129-32, 144-47, 151-54, 161-62.)   On February 21, 2023, after a hearing, an ALJ found that Plaintiff was not disabled.   (Tr. 10-21.)   The Appeals Council denied Plaintiff's claim for review.   (Tr. 1-6.)   Thus, the ALJ's decision stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff argues that the ALJ "did not properly evaluate the 'full limiting effects' of Plaintiff's impairments, as he described them and as demonstrated in the consultative examiner's findings."   (Doc. 9 at 3.)

## II.   The ALJ's Determination

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024.   (Tr. 12.)   He found that Plaintiff has not engaged in substantial gainful activity since his September 30, 2019 alleged onset date.   *Id.*   Next, the ALJ concluded that Plaintiff had the following severe impairments: chronic kidney disease, degenerative disc disease of the lumbar spine, essential hypertension, and obesity.   *Id.*   The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.   (Tr. 14.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The claimant can lift up to 20 pounds occasionally, and lift and/or carry up to 10 pounds frequently.   He can stand and/or walk for about six hours, and sit for up to six hours in an eight hour work day, with normal breaks.   He can frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds.   He can frequently stoop, kneel, crouch and crawl.   He should avoid concentrated exposure to operational control of moving machinery and hazardous machinery.   He should avoid unprotected heights.

(Tr. 16.)

The ALJ found that Plaintiff was capable of performing past relevant work as a production assembler worker and was, therefore, not disabled.   (Tr. 19.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on December 3, 2020, the claimant is not disabled under sections 216(0) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on December 3, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 20-21.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.   Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists

in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a, which do not require further elaboration as Plaintiff does not challenge the ALJ's finding that his mental impairments are not severe.

### IV.   Discussion

Plaintiff challenges the ALJ's physical[3] RFC determination.   Plaintiff argues that, in assessing Plaintiff's RFC, the ALJ improperly evaluated Plaintiff's "credibility," failed to include limitations to account for the limited range of motion of his shoulders noted by the consultative examiner, and failed to fully develop the record.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.   *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).   The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).   Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.   *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).   The claimant has the burden to establish RFC.   *Mabry v.*

---

[3]Although Plaintiff also alleged the presence of disabling mental impairments, he does not challenge the ALJ's finding that his mental impairments are not severe and result in no limitations.

*Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).    The RFC need only include the limitations supported

by the record.    *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).    The Court recognizes

that an ALJ "may not draw upon his own inferences from medical reports."    *Nevland v. Apfel*,

204 F.3d 853, 858 (8th Cir. 2000).    However, the Eighth Circuit has held that the "interpretation

of physicians' findings is a factual matter left to the ALJ's authority."    *Mabry*, 815 F.3d at 391

(citation omitted).

The ALJ found that Plaintiff could perform light work with the following additional

limitations:

> He can frequently climb ramps or stairs, but never climb ladders,
> ropes or scaffolds.    He can frequently stoop, kneel, crouch and
> crawl.    He should avoid concentrated exposure to operational
> control of moving machinery and hazardous machinery.    He
> should avoid unprotected heights.

(Tr. 16.)

### A.  Shoulder Impairment

Plaintiff's primary argument is that the ALJ failed to account for the limited range of

motion of his shoulders, as found by consulting physician Nicholas Smith, D.O.

Plaintiff saw Dr. Smith for a consultative examination at the request of the state agency

on July 17, 2021.    (Tr. 424.)    He complained of depression, bipolar disorder, hypertension, and

kidney disease.    *Id.*    Plaintiff was last employed in February 2020 as a "maintenance man."    *Id.*

Plaintiff stated that he was diagnosed with hypertension in 2020, and that he felt his blood

pressure was controlled on medications.    *Id.*    He indicated that he was also diagnosed with

kidney disease in 2020, and that he has "no current issues" related to his kidney disease.    *Id.*

On examination, Plaintiff's blood pressure was 168/96.    (Tr. 425.)    He was five feet-ten inches

tall and weighed 258 pounds.    *Id.*    His musculoskeletal examination revealed no palpable joint

effusion, normal muscle bulk and tone, and tenderness to the midline of his mid to lower thoracic spine and paraspinal soft tissue.   *Id.*   He was able to rise from a seated position without difficulty, and walk around the room without an assistive device with an antalgic gait; but could not heel-walk, toe-walk, or squat down due to pain.   *Id.*   Dr. Smith noted reduced range of motion in the lumbar spine and shoulders as follows: his forward flexion of the lumbar spine was reduced from 90 degrees to 70, and his lateral flexion was reduced from 25 degrees to ten bilaterally; and his shoulder flexion was reduced from 180 degrees to 90 degrees bilaterally, and his abduction was reduced from 170 degrees to 90 bilaterally.   (Tr. 419.)   Plaintiff had full range of motion on extension and adduction of his bilateral shoulders.   *Id.*   Plaintiff's neurologic examination revealed full strength in all extremities and normal sensation to light touch in all extremities.   *Id.*   Dr. Smith summarized that Plaintiff was seeking disability due to hypertension and chronic kidney disease, and Plaintiff's cardiopulmonary and neurologic exams were normal and Plaintiff displayed no evidence of end organ damage.   (Tr. 426.)   He stated that Plaintiff's medical records demonstrated that his creatinine level was consistent with chronic kidney disease.   *Id.*

The ALJ summarized Dr. Smith's findings from his consultative examination, including Plaintiff's reduced range of motion on flexion and abduction of the bilateral shoulders.   (Tr. 18.) He stated that, despite the abnormalities noted on exam, Plaintiff had full strength in all extremities, his sensation was intact, his cranial nerve testing was grossly intact, he was able to rise from a seated position without difficulty, he had normal muscle bulk and tone, he had no joint effusion, and his straight leg raise testing was negative.   *Id.*

The ALJ then discussed the medical evidence following Dr. Smith's consultative examination.   He noted that at a November 2021 follow-up appointment at Affinia Healthcare

regarding his hypertension and chronic kidney disease, Plaintiff again reported no symptoms related to his kidney disease and denied chest pain, shortness of breath, fatigue, and headache. (Tr. 18, 440.)   His blood pressure was 216/122.   (Tr. 18, 442.)   Plaintiff reported experiencing no pain.   *Id.*   Plaintiff's physical examination revealed no abnormalities.   (Tr. 18, 443.) Plaintiff was diagnosed with uncontrolled hypertension, and it was noted that he was noncompliant with his medication.   *Id.*   Plaintiff's hypertension medications were adjusted.   *Id.* He was referred to cardiology for his hypertension and nephrology for his kidney disease.   *Id.* Plaintiff was prescribed nutrition therapy and exercise education for his obesity and was counseled regarding tobacco abuse.   *Id.*   At a cardiology appointment in June 2022, Plaintiff's blood pressure was again elevated, but his physical examination normal.   (Tr. 18, 27.)   The ALJ noted Plaintiff underwent a Holter heart monitoring test in August 2022, which revealed rhythms that were sinus bradycardia to sinus tachycardia.   (Tr. 19, 474.)

The ALJ concluded that, overall, the record shows Plaintiff had high blood pressure and an elevated BMI throughout the relevant period, but physical examinations were "rather normal with no significant physical abnormalities."   (Tr. 19.)   He acknowledged that the consultative physical examination "revealed some tenderness in his spine as well as some difficulty with orthopedic maneuvers."   *Id.*   The ALJ stated that a reduction to light exertional work with further postural and environmental limitations is reasonable "given the claimant's obesity and high blood pressure so as to not exacerbate his symptoms and to provide for his safety."   *Id.* He stated that the limitations were further supported by the mild to moderate degenerative changes in his spine as found in June 2021 imaging.   (Tr. 19, 417.)   Additionally, the ALJ noted that the reduction in exertion to light work would benefit Plaintiff's chronic kidney disease so that he does not over-exert himself.   *Id.*

As to the opinion evidence, the ALJ indicated that he had considered the prior administrative findings of Nancy Weber-Bornstein (internal medicine specialty listed but no credentials given), and James Weiss, M.D., and found them "not persuasive."  (Tr. 19, 83-85, 91-93, 99-101, 107-09.)   Both sources expressed the opinion that Plaintiff is capable of a reduced range of medium work, including frequently climbing ramps, stairs, ladders, ropes or scaffolds; frequently stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to hazards.   *Id.*   The ALJ explained that, because of Plaintiff's degenerative disc disease, coupled with his hypertension, a reduction to light exertional work was "more reasonable."  (Tr. 19.)   He further stated that this reduction was "also supported by the findings at the consultative examination showing some reduced range of motion as well as tenderness in his spine"  *Id.*

Plaintiff argues that the ALJ erred in failing to discuss Dr. Smith's finding that Plaintiff had limited range of motion of his shoulders, "which should have compelled overhead and side reaching limitations."  (Doc. 9 at 9.)

Defendant responds that the ALJ did discuss Dr. Smith's findings but also noted that Plaintiff demonstrated full strength in his arms.   Defendant further points out that Plaintiff alleged no arm or shoulder impairment contributing to his alleged disability, and the record contains no treatment for such.

The undersigned agrees that it is significant that Plaintiff did not allege a shoulder impairment in his applications for benefits.  *See Wall v. Astrue,* 561 F.3d 1048, 1062 (10th Cir. 2009) (holding that because the claimant did not allege that she suffered from a severe mental impairment, the "AL"'s failure to discuss listing 12.05C [was], therefore unsurprising"); *Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001) (holding that the fact that the claimant

did not allege depression on his benefits application was significant even though evidence of depression was later developed); *Harris v. Colvin*, No. 4:13-CV-02313-SPM, 2015 WL 756325, at *4 (E.D. Mo. Feb. 23, 2015) ("It is also significant that Plaintiff did not allege in her application for disability benefits that her lupus (or the related rash) was disabling").    Instead, Plaintiff only listed hypertension and kidney disease as the basis for his physical disability claim.

Moreover, Plaintiff failed to report shoulder pain or restriction of motion in his Function Report or to his providers as reflected in the treatment notes.    In his Function Report, Plaintiff indicated that his impairments did not affect his ability to reach.    (Tr. 330.)    When asked by the ALJ at the hearing what physical problems he had that affected his ability to perform daily activities, Plaintiff identified only pain in the lower to middle part of his back and chronic kidney disease.    (Tr. 46-47.)    The medical record is silent as to complaints of shoulder pain or limitations.    Although Dr. Smith found Plaintiff's range of shoulder flexion and abduction was reduced, he noted full arm strength and included no reference to a shoulder impairment or restriction in his assessment.    (Tr. 426.)    Further, the state agency physicians reviewed the findings from Dr. Smith's examination and did not include an overhead lifting restriction.    (83-85, 91-93, 99-101, 107-09.)    As explanation for their RFC assessment, they noted that Plaintiff did not allege back pain, reported having no pain at a February 2021 medical visit, reports no use of pain medication, and received no pain management or chiropractic treatment.    *Id.*

Ultimately, Plaintiff did not carry his burden to demonstrate a shoulder impairment requiring a limitation in his ability to reach overhead.    *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).    The ALJ's lack of an overhead lifting limitation is supported by the only medical opinion evidence in the record, Plaintiff's treatment notes, and Plaintiff's own statements.

Thus, the ALJ did not commit reversible error in failing to include a limitation in Plaintiff's ability to reach overhead.

**B. Credibility**

Plaintiff also argues that the ALJ erred in assessing the "credibility"[4] of his allegations, regarding his need to frequently change positions from standing, walking, and sitting.

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.   20 C.F.R. § 404.1529(c); SSR 16-3p.   "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."   *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001).   The Court must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence."   *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).   When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler,* 739 F.2d 1320, 1322

---

[4]This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.   However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."   *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

(8th Cir. 1984).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

In addition to evaluating the medical evidence, the ALJ formulated Plaintiff's RFC after consideration of the entire record, which included an assessment of Plaintiff's subjective symptoms, his testimony, and his daily activities.  The ALJ noted that Plaintiff alleges disability due to difficulty lifting, squatting, bending, walking, talking, kneeling, seeing, and remembering stemming from his kidney disease, degenerative disc disease, hypertension and obesity.  (Tr. 17.)  Plaintiff testified that he could walk about half a block before having to sit down, walk for about twenty minutes, stand for about fifteen minutes, and lift up to twenty pounds.  (Tr. 17, 47)  The ALJ also noted that Plaintiff reported independence in his activities of daily living.  (Tr. 17, 49-50.)  Plaintiff testified that on a typical day, he sits down and tries to do some writing; tries to lift weights, but cannot; takes a shower; cleans his room; and rests.  (Tr. 49-50.)  He stated that he used to earn some money by transporting people to the store and shopping, but he is no longer able to do that because his vehicle was stolen and he has no transportation.  (Tr. 50.)

The ALJ found that Plaintiff's allegations of disability were not consistent with the record as a whole.  (Tr. 17.)  He stated that Plaintiff has impairments that could reasonably be expected to produce a certain degree of symptoms, but a restriction to a range of light work adequately addresses the intensity of Plaintiff's symptoms.  *Id.*

As previously discussed, Plaintiff's treatment notes reveal diagnoses of hypertension and kidney disease, but physical examinations typically revealed no abnormalities.  The ALJ also noted that treatment notes do not extend back to Plaintiff's alleged onset of disability date of September 30, 2019.  Instead, the first treatment note is from an October 2020 examination at

Affinia Healthcare, where he reported middle and lower back pain without radiation, which he described as "an ache aggravated by twisting."  (Tr. 18, 387.)   Only left myofascial tenderness in the lumbar spine was noted on examination.  (Tr. 18, 391.)   His cardiovascular examination was normal.  *Id.*  Plaintiff's hypertension medication was refilled.  *Id.*  Plaintiff returned for follow-up in February 2021, at which time his blood pressure was elevated, but his physical examination revealed no abnormalities.  (Tr. 18, 397-98.)   Plaintiff's next examination occurred in July 2021, at his consultation with Dr. Smith.

Plaintiff fails to point to error in the ALJ's evaluation of his subjective complaints.   The ALJ was not required to fully credit all of Plaintiff's assertions regarding the limitations given his relative lack of medical treatment during the relevant period; the medical evidence of record showing few abnormalities on examination; his lack of pain medication; and his relatively normal daily activities.

### C.   Development of Record

Plaintiff finally argues that, because the ALJ found the prior administrative findings unpersuasive, he should have further developed the record by scheduling another consultative examination or obtaining medical expert testimony.

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision.  *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Moreover, it is ultimately Plaintiff's burden to establish his RFC, and he failed to carry this burden by producing any evidence that his RFC should be more limited because of his hypertension, chronic kidney disease, degenerative disc disease of the lumbar spine, or obesity. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ relied on the objective medical evidence of record, which he specifically considered and factored into his evaluation of Plaintiff's RFC.   To account for Plaintiff's credible limitations with respect to all of his severe impairments, the ALJ limited Plaintiff to a reduced range of light work.   These limitations are consistent with his conservative treatment and numerous examinations which yielded normal (or at most slightly abnormal) results.   The only medical opinions regarding Plaintiff's ability to work are those from the state agency physicians, who found Plaintiff was *less restricted* than found by the ALJ.   The ALJ considered these opinions along with the findings of Dr. Smith and formulated an RFC not identical to any of the opinions.   That is precisely the role of the ALJ.

The new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).   Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry*, 815 F.3d at 391.   Although Plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not this Court's role to reweigh the medical evidence of Plaintiff's limitations considered by the ALJ in his determination of Plaintiff's RFC.   *Hensley*, 829 F.3d at 934.

The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.   Under these circumstances, the ALJ was not required to further develop the record.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2025.